**Elaine D. CARON, Individually and as Next Friend of Wade Ledoux**

v.

**Arthur CARON.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 12, 1990.

Decided July 13, 1990.

---

Frederick C. Moore, Robinson, Kriger, McCallum & Greene, Portland, for plaintiff.

John H. O'Neil, Jr., Smith & Elliott, Saco, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

COLLINS, Justice.

Defendant, Arthur Caron, timely appeals the judgment in Superior Court (York County, *Perkins, J.*) awarding plaintiffs, Elaine D. Caron and her son, Wade Ledoux, compensatory and punitive damages in a civil suit for assault, battery and intentional infliction of emotional distress. Arthur contends that the Superior Court abused its discretion in admitting evidence, which he argues was unduly prejudicial, of acts that Arthur allegedly committed more than six years before this case was filed and that therefore fall beyond the scope of the statute of limitations. He also argues that the amount of punitive damages awarded by the jury was not supported by the evidence. We find no merit in these arguments and affirm the judgment.

It was established at trial that the parties were married in 1977 and divorced in 1984. They had one child, Nicole. Elaine also had a son, Wade Ledoux, from a previous marriage. Evidence of Arthur's treatment of Elaine and Wade both before and after the divorce was introduced. Evidence of Arthur's conduct after the divorce centered on an incident in October 1986, when Elaine went to Arthur's house to pick up Nicole who was visiting Arthur. Elaine testified that Arthur invited her into his house, but during the subsequent conversation Arthur became angry and ordered Elaine to leave. Elaine acquiesced, but when she stopped to call Nicole, Arthur grabbed Elaine by her ponytail, kicked her feet out from under her and dragged her around the house. He also kicked her several times in the side. Elaine speculated that this episode continued for about 15 minutes before Arthur picked Elaine up by her arm and her leg and threw her off his forty-inch high porch onto the sidewalk. As a result, Elaine suffered a permanent disabling knee injury that surgery has failed to correct and that has forced her to leave her job. Elaine has also developed post-traumatic stress syndrome as a result of which she is afraid to leave the house alone, she has flashbacks to the assault and nightmares, she has a high anxiety level, and she suffers from a severe bladder control problem.

Arthur admitted that he grabbed Elaine by her hair in such a way that she was off her feet and that he threw her off his porch. He stated that he was "using a reasonable amount of force ... necessary to remove her because Elaine refused to leave." As a result of this incident, Arthur pleaded guilty to criminal assault.

Evidence was also introduced of Arthur's acts of violence and intimidation committed before the divorce against Elaine. In addition, Elaine testified that after the parties separated Arthur made death threats to her over the phone "almost every other day." Arthur admitted making "numerous" death threats to Elaine and stated that he regarded these utterances as being statements of fact rather than mere threats.

Both Elaine and Wade testified about incidents in which Arthur abused Wade. Elaine and Wade described how Arthur would force-feed Wade. If Wade gagged or retched, Arthur would spoon the vomit back into Wade's mouth. They also related an incident when Wade received a deep cut over his eye because Arthur threw Wade at the wooden arm of a couch. On another occasion, Arthur repeatedly slapped Wade back and forth across the face, giving him two black eyes. Elaine stated that "as a rule" Arthur forced Wade to stay in his room in the morning until Arthur left for work, causing Wade, who was thus denied access to the bathroom, to urinate in his pajamas.

The jury awarded $119,000 in compensatory damages and $75,000 in punitive damages to Elaine and $20,000 in compensatory damages and $35,000 in punitive damages to Wade.

Arthur argues that he should be granted a new trial because the trial court admitted over his objection unduly prejudicial evidence of pre–1982 acts that were beyond the scope of the statute of limitations. Specifically, Arthur objects to the introduction of incidents in which: Arthur stranded Elaine on the tree limb and threw rocks at her knuckles; Arthur locked Elaine out of the house in her nightgown; and Arthur twice attempted to kill Elaine's dogs. The trial court allowed the evidence to be admitted "for the purposes of establishing the defendant's intent or motivation as well as on the issue of whether or not [Elaine] reasonably believed any threats that may have been made by [Arthur]." However, the trial justice instructed the jury that they were not allowed to award compensation for any of the pre–1982 acts.

■■■ While evidence of these acts was not admissible for the purpose of proving that Arthur had a bad character and that he acted in conformity with that bad character when committing the charged acts, the evidence was admissible for the purpose of establishing Arthur's intent or the relationship between the parties, the grounds upon which the trial court admitted it. M.R.Evid. 404(b); *State v. DeLong*,

505 A.2d 803, 805 n. 1 (Me.1986). "The presiding justice has broad discretion in ruling on the admissibility of evidence challenged as unfairly prejudicial; review of such rulings focuses on whether there was an abuse of discretion." *State v. Wallace*, 431 A.2d 613, 616 (Me.1981). The record reveals that the trial justice did not abuse his discretion in the case at bar. The evidence was probative of both Arthur's intent when he threw Elaine off the porch and the reasonableness of Elaine's incapacitating fear of Arthur. The four contested incidents are relatively mild and were unlikely to improperly sway the jury in light of the unchallenged evidence of Arthur's other acts of violence and intimidation.

■■■ Arthur contends that the amount of punitive damages awarded by the jury was excessive given the evidence concerning Arthur's financial condition. Arthur's financial condition, however, is only one factor in the punitive damages equation, which the factfinder in its discretion may consider. While the factfinder should consider a defendant's lack of assets as well as "any other factor indicating that an award of punitive damages would not serve a deterrent function beneficial to society," the factfinder must also consider aggravating factors such as the defendant's state of mind at the time of the tortious conduct. *Hanover Insurance Co. v. Hayward*, 464 A.2d 156, 158 (Me.1983). The primary purpose of punitive damages is to "express[ ] society's disapproval of intolerable conduct and [to] deter[ ] such conduct where no other remedy would suffice" and is entirely proper in a case of wife and child abuse. *Tuttle v. Raymond*, 494 A.2d 1353, 1355 (Me.1985). Furthermore, although in order to preserve its deterrent value the award must "bear some relationship to the actual wealth of the defendant," *Braley v. Berkshire Mutual Insurance Co.*, 440 A.2d 359, 363 (Me.1982), we have refused to do away with the individualized nature of punitive damages by setting a fixed formula for their calculation. *Tuttle*, 494 A.2d at 1359 (the fact that punitive damages can be individualized to provide deterrence adequate

for each case is an important aspect of this doctrine).

■ There was also sufficient evidence in the record to support the punitive damage awards as reasonable in relation to Arthur's financial condition. Arthur testified that in a 1987 child custody proceeding he stated that his income for the past year was $234,000. As of December 1988, Arthur claimed $285,000 in total assets and testified that this total did not include a $50,000 accounts receivable. He further admitted that since December of 1988, he had purchased a building, which "has the potential to produce revenue income," and which he expected to increase in value. He also admitted that he expected his business to increase.

Accordingly, the jury's punitive damage awards were supported by the evidence of intentional malice and were not so unrelated to Arthur's income that their deterrent value was lost.

The entry is:

Judgment affirmed.

All concurring.