STATE of Maine

v.

Michael NAYLOR.

Supreme Judicial Court of Maine.

Argued Nov. 21, 1991.
Decided Jan. 15, 1992.

R. Christopher Almy, Dist. Atty., Jeffrey Silverstein (orally), Asst. Dist. Atty., Bangor, for plaintiff.

Claudia C. Sharon (orally), Portland, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Defendant Michael Naylor appeals his conviction of unlawful sexual contact, 17–A M.R.S.A. § 255 (1983),[1] following a jury trial in the Superior Court (Penobscot County, *Browne, A.R.J.*). Because we agree with Naylor that the court erred in admitting testimony from the victim's mother concerning the victim's first report of the incidents for which Naylor was

---

1. 17–A M.R.S.A. § 255 (1983) provides:

1.  A person is guilty of unlawful sexual contact if he intentionally subjects another person, not his spouse, to any sexual contact, and:

. . . .

C.  The other person, not the actor's spouse, has not in fact attained his 14th birthday and the actor is at least 3 years older. "Sexual contact" is defined as "any touching of the genitals, directly or through clothing, other than as would constitute a sexual act, for the purpose of arousing or gratifying sexual desire." 17–A M.R.S.A. § 251(1)(D) (1983).

charged and in excluding evidence of Naylor's reputation for being an excellent father, we vacate the conviction.[2]

Michael Naylor and his first wife were divorced two years after the birth of their daughter, the victim. Following the divorce, Naylor's daughter visited him frequently. Naylor pursued a career in counseling, and eventually remarried. At one point, when Naylor's second wife was undergoing counseling for being sexually abused as a child, Naylor counseled the victim about sexual abuse. On another occasion, Naylor and his second wife had an argument, and he refused to sleep with his wife, and instead he slept with the victim who was 10 years old at the time. Soon after, Naylor's second wife contacted the victim's mother who stopped allowing the victim to visit Naylor[3] and began investigating possible sexual abuse by Naylor.

The mother took the victim to Dr. Lawrence Ricci, who examined the child and found physical evidence of possible sexual abuse. Dr. Ricci discussed that possibility with the victim, but she denied being abused. Later, after several months of counseling, the victim began to remember instances of being sexually abused by Naylor. She remembered that when she was seven or eight on two separate occasions she awoke to find Naylor in bed with her, once with his finger in her vagina, and once with his penis in her vagina. Naylor was indicted for both unlawful sexual contact and gross sexual misconduct. 17-A M.R.S.A. § 253 (1983).[4]

At trial, the State elicited testimony from the victim's mother concerning the first time the victim brought the accusations to her attention. In that testimony, the mother stated that the allegations concerned Naylor.[5] Prior to Naylor's presenting his defense, the court granted the State's motion to exclude all character evidence on Naylor's behalf. On the record, Naylor proffered unsuccessfully that his witnesses would testify that among his companions, his coworkers, and co-residents of a dormitory he oversaw, Naylor had the reputation for being an excellent father, and for having excellent counseling skills. The jury found Naylor guilty of unlawful sexual contact, but not guilty of gross sexual mis-

---

2. Because we vacate the conviction for the two evidentiary rulings discussed herein, we do not address Naylor's third contention that the admission of certain expert testimony impermissibly bolstered the victim's testimony.

3. *See Cooke v. Naylor,* 573 A.2d 376 (Me.1990).

4. 17-A M.R.S.A. § 253 (1983) states in relevant part:

A person is guilty of gross sexual misconduct if that person engages in a sexual act with another person,

....

B. The other person, not his spouse, and has not in fact attained his 14th birthday.

A "sexual act" is defined as "any act of sexual gratification between 2 persons involving direct physical contact between the sex organs of one and the mouth or anus of the other, or direct physical contact between the sex organs of one and the genitals of the other...." 17-A M.R.S.A. § 251(1)(C) (1983).

5. The contested testimony was as follows:

Q. Did you discuss with—discuss sexual abuse with [the victim] following your conversation with Dr. Ricci?
A. When [the victim] brought it up to me.
Q. Okay. At some point she brought up sexual abuse to you?

A. Yes.
Q. And was that in reference to something she had remembered?
A. Yes, it was.
Q. When did she do that, if you can recall?
A. It was in the latter part of October.
Q. And how did she come to you with that?
A. I, um, had been out in the kitchen doing dishes, and I walked into the living room and—and she told me she—
(Objection; sustained)
Q. She had a conversation with you at that point?
A. Yes, she initiated a conversation.
Q. And that—did that conversation pertain to sexual abuse?
A. Yes.
(Objection and motion to strike; conference; overruled).
Q. [A]gain, referring to this conversation you had with [the victim], I believe, in October of '87—
A. Yes.
Q. Did that conversation pertain to sexual abuse?
A. Yes, it did.
Q. And did that conversation pertain specifically to your ex-husband?
(Objection on same grounds argued in conference; overruled.)
A. Yes.

conduct. This appeal followed his conviction.

Because Naylor preserved his objections, we review the alleged trial errors under a harmless error standard. M.R.Evid. 103(a); M.R.Crim.P. 52(a). We will treat error as harmless only if it is highly probable that the error did not affect the judgment. *State v. Lafrance,* 589 A.2d 43, 46 (Me.1991).

Naylor first argues that the testimony of his first wife concerning the victim's report of the accusations should have been excluded as hearsay. As a general rule, extrajudicial statements of a victim of sexual abuse are inadmissible as hearsay. *State v. True,* 438 A.2d 460, 464 (Me.1981). Such statements may be admissible, however, if they fall within one of three recognized exceptions. *Lafrance,* 589 A.2d at 45. One of those exceptions is the first complaint rule,[6] under which "[t]he bare *fact* that a complaint has been made is admissible as part of the State's case in chief to forestall the natural assumption that in the absence of a complaint, nothing [untoward] had occurred." *True,* 438 A.2d at 464 (emphasis in original). Details of the complaint, however, are irrelevant for this purpose and do not fall within the exception and, therefore, are not admissible. *Lafrance,* 589 A.2d at 45; *State v. Calor,* 585 A.2d 1385, 1387 (Me.1991); *True,* 438 A.2d at 464; *State v. Galloway,* 247 A.2d 104, 106 (Me.1968); *State v. Bragg,* 141 Me. 157, 161, 40 A.2d 1 (1944); *State v. King,* 123 Me. 256, 257, 122 A. 578 (1923). In a case such as this, where the credibility of the victim is so crucial, any inadmissible corroboration of her testimony serves to impermissibly strengthen her accusations and will unduly prejudice the defendant. In order to avoid the admission of such evidence, the court should exercise careful control of the testimony by allowing counsel to lead the witness with specific questions, or by cautioning the witness

prior to the testimony. *See Calor,* 585 A.2d at 1387.

Here, even after Naylor's repeated objections, the court allowed the mother to testify that the victim had a conversation with her that "pertain[ed] to sexual abuse," and "pertain[ed] specifically to [Naylor]." Such testimony identifying Naylor as the perpetrator served to strengthen the victim's credibility. It could have been avoided, and should have been excluded. Since we cannot say that it is highly probable that this testimony did not affect the judgment, the error is not harmless.

Naylor also argues that the court erred by refusing to admit evidence of Naylor's character. Although character evidence is generally inadmissible for the purpose of proving that a person acted in conformity therewith, M.R.Evid. 404(a), character evidence of an accused is admissible if it involves a character trait pertinent to commission of the crime charged. M.R.Evid. 404(a)(1). "A trait is pertinent if the existence or nonexistence of the trait would be involved in the commission or noncommission of the particular crime charged," *State v. Brown,* 592 A.2d 163, 164 (Me.1991), or if it would reduce the likelihood that the accused would engage in such conduct. *See State v. Doherty,* 437 A.2d 876, 878 (Me.1981). The trait need not be an essential element of the crime charged. *Brown,* 592 A.2d at 165.

In this case, Naylor offered to prove his character for being an excellent father and an excellent counselor. Evidence of being an excellent father is pertinent to the charge of sexually abusing one's daughter. Sexually abusing one's child is so alien to the inclinations of a loving and responsible parent that an excellent father would be less likely to commit such a traumatic crime. Accordingly, evidence of Naylor's character for being an excellent father is admissible under Rule 404(a)(1).[7]

---

6. Neither of the other two exceptions is urged or applicable in this case.

7. It is a devoted parent's desire to care for and protect one's child that is pertinent to the issue of this crime. Possessing technically proper

parenting skills is not. Possessing excellent counseling skills is not relevant either, and it was not error to exclude evidence that Naylor was an excellent counselor.

Pursuant to M.R.Evid. 405, proof of character evidence admissible under Rule 404(a)(1) may be made by testimony as to reputation. Because the court excluded all of Naylor's proposed character evidence, the court did not fully test that evidence under Rule 405.[8] We cannot say that Naylor's proffer failed to meet the criteria of Rule 405. Its exclusion was not harmless error.

The entry is:

Judgment vacated.

All concurring.

**8.** Pursuant to M.R.Evid. 405, "[t]he reputation witness must be testifying from personal knowledge on the subject of what the defendant's reputation for the pertinent trait of character involved is in the community to which the defendant belongs or among his associates." *State v. Wells,* 423 A.2d 221, 227 (Me.1980); *see State v. Brown,* 592 A.2d 163, 165 (Me.1991). The group that holds the reputation must be made of more than several individuals. *State v. Doherty,* 437 A.2d 876, 879 (Me.1981).