**STATE of Maine**

v.

**Christopher MINGO.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 15, 1993.
Decided July 28, 1993.

Stephanie Anderson, Dist. Atty., Jane Elizabeth Lee, Asst. Dist. Atty., Portland, for State.

Robert E. Mullen, Linnell, Choate & Webber, Auburn, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

COLLINS, Justice.

Christopher Mingo, a former employee of the Pineland Center, appeals from a judgment entered on his conviction of endangering the welfare of an incompetent person, pursuant to 17–A M.R.S.A. § 555 (1983),[1] after a jury trial in the Superior Court (Cumberland County, *Perkins, J.*). Mingo contends that his conviction should be vacated because the trial court: (1) denied his motion to sever the multiple offenses charged against him and to sever his trial

---

1. 17–A M.R.S.A. § 555 (1983) provides:

1. A person is guilty of endangering the welfare of an incompetent person if he knowingly endangers the health, safety or mental welfare of a person who is unable to care for himself because of advanced age, physical or mental disease, disorder or defect.

2. As used in this section "endangers" includes a failure to act only when the defendant had a legal duty to protect the health, safety or mental welfare of the incompetent person.

3. Endangering the welfare of an incompetent person is a Class D crime.

from that of his co-defendant, Daniel Beggs; (2) excluded evidence of Mingo's reputation as an excellent mental health worker; and (3) gave erroneous and incomplete jury instructions. Mingo also challenges the sufficiency of the evidence. We affirm the conviction.

Mingo began working at the Pineland Center in 1981 and was transferred to a unit known as Federation IV ("Fed IV") in June of 1990. The six residents of Fed IV suffer from a range of high severe to profound mental retardation and none are able to speak. Each resident has a program plan describing how workers should respond to various misbehavior by that resident. These plans are only amended after a "team meeting" has been held to consider the suggested changes.

The alleged victim of the offense for which Mingo was convicted, Robert Cormier, was 45 years old at the time of the alleged assault and is severely mentally retarded due, at least in part, to Down's syndrome. Cormier also suffers from bilateral cataracts, degenerative bone disease in his hip, and, most important to the case at hand, "postural gravitational insecurity," i.e., he "show[s] a fear response when [his] balance is displaced." Mingo and his co-workers knew that Cormier was "afraid of heights." Nevertheless, two staff members of Fed IV, William Sharp and Deborah Lowe, testified that they observed Mingo force Cormier to stand on milk crates when Cormier misbehaved. Sharp also testified that this caused Cormier to cry and scream. Lowe testified that Cormier responded by whining. Sharp testified that he observed Mingo and his codefendant, Beggs, act together to force Cormier to stand on milk crates. Mingo denied ever forcing Cormier to stand on milk crates; Beggs did not testify.

For his alleged conduct involving Cormier and other Fed IV residents, a grand jury indicted Mingo on two counts of assault and four counts of endangering the welfare of an incompetent person. In the same indictment, Beggs was also indicted for four counts of endangering the welfare of an incompetent person for his alleged conduct involving Fed IV residents. The trial court denied Mingo's motion for relief from prejudicial joinder of offenses and defendants holding that no prejudice would result from the joinder. The jury found both Mingo and Beggs guilty of endangering the welfare of Robert Cormier, an incompetent person, and not guilty on all other counts. Mingo filed this timely appeal.

*I.*

### Joinder

#### A. Joinder of Defendants:

Mingo asserts that, "there was virtually no evidence presented at trial which would indicate that the defendants participated in the same act or a transaction which formed a basis for the various counts in the Indictment." We disagree. The joinder of defendants is governed by M.R.Crim.P. 8(b) which allows two or more defendants to be charged in the same indictment if they are "alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." *Id.* The disposition of a motion to sever the trial of one defendant from the trial of another lies in the sound discretion of the trial court, and on appeal, we review only for an abuse of discretion. *State v. Langill,* 567 A.2d 440, 442 (Me.1989).

We find no abuse of discretion in this case. Both Mingo and Beggs were charged with the same conduct; both were charged with forcing Cormier to stand on milk crates; withholding a wristband from another Fed IV resident, Robert Deschamp; and forcing a third Fed IV resident, David MacMahon, to stand with weights in his hands for prolonged periods. Furthermore, severing the defendant's trial from that of his co-defendant's in this case would have required great duplication of effort with many of the same witnesses necessary for both trials. As we have previously stated, "joint trials are generally favored in the interest of conserving judicial resources, avoiding duplicative trials, minimizing the public expenditure of funds and promptly bringing the accused to trial."

*State v. Creeger,* 576 A.2d 757, 759 (Me. 1990) (quoting *State v. Anderson,* 409 A.2d 1290, 1297 (Me.1979)).

Mingo fails to articulate why the joinder of these defendants was prejudicial. *See* M.R.Crim.P. 8(d).[2] Because neither Mingo nor Beggs confessed or made any admissions, no *Bruton* problem existed, *see Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (requiring severance when non-testifying co-defendant confesses to or makes admissions concerning prior criminal conduct or the intent to commit a crime and the confession or admission inculpates the defendant); nor were their defenses antagonistic. *State v. Colomy,* 407 A.2d 1115, 1117–18 (Me.1979) (upholding joinder of defendants where no *Bruton* problem and "no intimation ... that there would be antagonistic defenses presented").

**B. Joinder of Offenses:**

■ We also reject Mingo's contention that the offenses against him were improperly joined. The joinder of offenses are governed by M.R.Crim.P. 8(a) which provides that "[t]wo or more offenses may be charged in the same indictment ... if the offenses charged ... are of the same or similar character or are based on the same act or transaction...." *Id.* The requirements of Rule 8(a) are easily met in this case; the offenses charged were all of the same character and involved Mingo's conduct with the residents of Fed IV while he was an employee of the Pineland Center. Mingo again failed to demonstrate any unfair prejudice resulting from this joinder of offenses. *See* M.R.Crim.P. 8(d).

## II.

### Character Evidence

■ At trial, Mingo attempted to introduce evidence that he was an "excellent

mental health worker." The trial court refused to allow this evidence holding essentially that "being a mental health worker in and of itself" was not a "character trait as such." Mingo asserts that the trial court's exclusion of this evidence was contrary to our holding in *State v. Naylor,* 602 A.2d 187, 189–90 (Me.1992). We agree.

In *State v. Naylor,* the defendant, charged with sexually abusing his daughter, attempted to introduce evidence that he was an "excellent father" and an "excellent counselor" but the trial court excluded this evidence. We vacated Naylor's conviction, holding:

> Evidence of being an excellent father is pertinent to the charge of sexually abusing one's daughter. Sexually abusing one's child is so alien to the inclinations of a loving and responsible parent that an excellent father would be less likely to commit such a traumatic crime. Accordingly, evidence of Naylor's character for being an excellent father is admissible under [M.R.Evid. 404(a)(1)].

*Id.* at 189. We held that the evidence of Naylor's reputation as an "excellent counselor" was not relevant. *Id.* at 189 n. 7. In the case before us, being an "excellent mental health worker" is pertinent to the charge of endangering the welfare of an incompetent person, because an excellent mental health worker would certainly be less likely to endanger the welfare of those entrusted to that worker's care. *See State v. Wells,* 423 A.2d 221, 224 (Me.1980) (holding that a trait is pertinent if "the existence or non-existence of [the trait] would be involved in the non-commission or commission of the particular crime charged"). The trial court, therefore, erred in excluding this evidence. *See* M.R.Evid. 404(a)(1).[3]

---

2. M.R.Crim.P. 8(d) provides:

   **(d) Relief from Prejudicial Joinder.** If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment ... or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

3. M.R.Evid. 404(a)(1) provides:

   **(a) Character Evidence Generally.** Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

   (1) *Character of Accused.* Evidence of a pertinent trait of his character offered by an

■ An error should, however, be treated as harmless if we believe "it highly probable that the error did not affect the judgment." *State v. True*, 438 A.2d 460, 467 (Me.1981). In the case before us, Mingo was allowed to introduce substantial testimony that he was a nonviolent, peaceful individual. Several of Mingo's former colleagues at the Pineland Center, including his former supervisor, testified that Mingo was "gentle," "patient," "kind," "caring," "peaceful," "mellow," "laid back," and "low key." [4] Additionally, the testimony of two of Mingo's Pineland colleagues suggested that Mingo was very good with his clients. For example, Charles Holbrook testified on direct examination:

Q. ... did different members of these ... groups ... express an opinion as to what Mr. Mingo's reputation was for being a peaceful, gentle individual, whatever adjective you used?

A. Yeah, *they thought that Chris did a real good job with them.*

\*   \*   \*   \*   \*   \*

A. I believe that—well, everybody believes—that worked with Chris that *he was real good with the clients,* he went out of his way to—

[State's attorney]: I'm going to object.

THE COURT: I'll sustain the objection.

(Emphasis added). Merle Kennedy also suggested that Mingo was good with his clients:

Q. And what is your opinion ... of his reputation ... for being a peaceful, gentle person?

A. Well, he's—he's shown that many times with handling clients.

Based on the evidence that was admitted regarding Mingo's reputation as being a peaceful and gentle person among fellow Pineland workers as well as the praise for his work with his clients, we believe it highly probable that the court's refusal to admit testimony that Mingo was an "excellent mental health worker" did not affect the judgment. *State v. True*, 438 A.2d at 467.

■ Mingo also objected to the trial court's refusal, despite his request, to instruct the jury on the proper consideration of character evidence. Although we have not addressed the necessity of character instructions when character evidence has been introduced, the general rule is that, "[w]hen evidence of the good character of an accused has been introduced, the court on request should instruct the jury as to the application of, and the weight they may attach to, the evidence." 75B Am.Jur.2d § 1338 at 132 (1992) (footnotes omitted). It is a better and safer practice to instruct the jury as to the proper consideration of character evidence when such evidence has been produced, *Pitman v. State*, 487 P.2d 716, 726 (Okl.App.1971) (concluding that "in this case reversible error was not committed by failure of the court to instruct the jury upon the question of character"); because, without such an instruction, the jury may tend to discount or ignore character evidence, not perceiving its relevance to the issue of guilt. *State v. Allen*, 89 Wash.2d 651, 574 P.2d 1182, 1185 (1978). Nevertheless, the failure to instruct the jury on the proper consideration of character evidence certainly should not result in an automatic reversal. *See United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 614 (5th Cir.1991) (upholding conviction despite trial court's refusal to give a character instruction saying "abuse of discretion would occur only if the failure to give the instruction prevented the jury from considering the evidence.").

In the case before us, Mingo was allowed to submit a great deal of character evi-

accused, or by the prosecution to rebut the same; ....

**4.** For example, Debra Allen testified that: "He's very mellow and laid back and he is a patient type of person. He's very mellow, he's a very low key kind of person." She further testified that Mingo's reputation in the Pineland community among his coworkers was that "he is a mellow, laid back type of person ... a caring, mellow, laid back type of person." Mingo's supervisor, Marilyn Bowie Finch, testified that, "By all the staff's feelings about Chris, he is a— he's kind of a loaner (sic), he's laid back, Chris is a gentle man and kind."

dence to the jury and he makes no contention that he was barred from arguing this evidence to the jury in closing arguments. *See id.* Moreover, the trial court gave no instruction that restricted the jury's consideration of the evidence and, in fact, the jury was instructed to consider all of the evidence before it. *See id.*

■ Mingo's other challenges to the trial court's charge to the jury are without merit. Finally, contrary to Mingo's contention, from the evidence in the record, the trier of fact rationally could find beyond a reasonable doubt every element of the offense charged. *See State v. Barry,* 495 A.2d 825, 826 (Me.1985).

The entry is:

Judgment affirmed.

All concurring.