STATE of Maine

v.

Cleo J. NADEAU.

Supreme Judicial Court of Maine.

Submitted on briefs Nov. 14, 1994.

Decided Jan. 30, 1995.

Neal T. Adams, Dist. Atty., John M. Pluto, Deputy Dist. Atty., Caribou, for the State.

Scott G. Hunter, Solman & Hunter, Caribou, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Cleo Nadeau appeals from a judgment of conviction entered in the Superior Court (Aroostook County, *Pierson, J.*) after a jury verdict finding him guilty of gross sexual misconduct, 17–A M.R.S.A. § 253 (Supp. 1994),[1] and unlawful sexual contact, 17–A M.R.S.A. § 255 (Supp.1994).[2] He contends that the trial court erred in admitting evidence of uncharged sexual acts between himself and the victim. Finding no obvious error, we affirm the convictions.

Nadeau was indicted on four counts of sexual abuse. Counts I and II arose from an incident occurring on or about November 1991; Counts III and IV arose from an incident occurring on or about May 1992. Nadeau's wife provided full-time day care for the victim, an eight-year-old girl, between 1986 and 1990, and continued to occasionally

---

**1.** In pertinent part, section 253 provides:
   1. A person is guilty of gross sexual assault if that person engages in a sexual act with another person and:

   B. The other person, not the actor's spouse, has not in fact attained the age of 14 years. 17–A M.R.S.A. § 253(1)(B) (Supp.1994). A "sexual act" is defined as "[a]ny act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other." *Id.* § 251(1)(C)(1).

**2.** Section 255 reads, in pertinent part:

   1. A person is guilty of unlawful sexual contact if the person intentionally subjects another person to any sexual contact, and:

   C. The other person, not the actor's spouse, has not in fact attained the age of 14 years and the actor is at least 3 years older. 17–A M.R.S.A. § 255(1)(C) (Supp.1994). "Sexual contact" is defined as "any touching of the genitals or anus, directly or through clothing, other than as would constitute a sexual act, for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact." *Id.* § 251(1)(D).

babysit after 1990. The victim's mother testified that the victim stayed with the Nadeaus for several days in November 1991 when she was in the hospital giving birth to her son. She also testified that her daughter stayed with Nadeau in December 1991 when she went on an all-day shopping trip with Mrs. Nadeau, and that she left the victim with the Nadeaus in May 1992 when she and her husband went to Bangor for the weekend.

At the trial, the victim testified to specific sexual acts that occurred between Nadeau and herself on two occasions. She first testified that she stayed with the Nadeaus when her brother was born, from "the 24th to the 27th." She then described an incident that took place in Nadeau's bedroom when her mother was on a shopping trip with an aunt and Mrs. Nadeau. She stated that it occurred only a short time after her brother was born, and that it was around Christmas. She testified that she touched Nadeau's penis, and that he put his tongue in her vagina, put his finger in her anus, touched her breasts with his penis, and put his penis in her mouth.

In response to a question about whether there were other times that this happened, she stated that similar incidents had occurred on ten or fifteen other occasions before the shopping trip. She was then asked if it happened any times after the trip. She testified that in the summertime, in the shower in his bathroom, Nadeau had oral-genital contact with her, touched her anus, and that she touched his penis. She also testified that several children were outside playing and that Mrs. Nadeau was home. Following this testimony, the court instructed the jury regarding the use of uncharged sexual incidents.[3] No objection to the testimony or the instruction was made.[4]

When cross-examined, the victim stated that she thought the shower incident had occurred in the wintertime. She also gave contradictory testimony about whether Mrs. Nadeau was home during the Christmas incident. She admitted that she did not mention a shopping trip when she initially spoke with police. She did tell them that it happened around Christmas time, although she also admitted that she had been told on the Tuesday preceding trial that her mother went on a shopping trip that December, as well as being told the exact dates her mother was in the hospital giving birth.

On redirect, the victim again testified that Nadeau had engaged in similar conduct ten or twenty times with her. On Nadeau's objection and request for an instruction, the court stated, "I've instructed the jury that any evidence of other contact may not be admitted to prove that the defendant acted in conformity or did these acts. It may only be introduced to show a relationship between the parties."

The State also presented medical evidence. Dr. Lawrence Ricci, a pediatrician specializing in sexual abuse, testified that the victim had a healed hymenal tear and rectal scar. He testified that both of these findings were produced by some penetrating trauma. The victim's family physician testified that he had treated her for vaginal irritation and a urinary tract infection on several occasions between 1987 and June 1992, and that these could have been due to some sexual abuse.

---

3. The court instructed the jury:
   Members of the jury, this defendant has been charged with gross sexual assault or unlawful sexual contact specifically by indictment on two separate occasions in November on or about November 1991 and May 1992. Any reference to any other events or touchings similar to the offense charged may not be introduced for the purpose of proving the character of the defendant in order to show that he acted in conformity there on this or these occasions.
   However, evidence of other events may be introduced to show the relationship between the parties, which may shed light upon his motives or attractions to a victim or his intent; in other words, whether it was done on purpose or absence of a mistake, whether there was an opportunity. And any relationship between the victim may be admissible only for that purpose. You may proceed.

4. Prior to trial, Nadeau filed a motion *in limine* to prohibit the prosecution from introducing evidence of uncharged sexual contact between himself and the victim on the grounds that such evidence would be collateral, unfairly prejudicial, and would frustrate the administration of justice. The court denied the motion and indicated that it would instruct the jury regarding prior contacts.

Nadeau pointed to the inconsistencies in the victim's testimony during his closing arguments. The State's rebuttal argument included the following statement: "The obvious cause for this child's confusion is that this sort of activity went on and it went on a lot." At the close of the evidence, the jury was again instructed regarding the appropriate use of uncharged criminal conduct.[5] After three and one-half hours of deliberation, the jury informed the presiding justice that they had reached a verdict on the first two counts, but were deadlocked on the other two. A verdict of guilty was returned on Counts I and II, stemming from the November 1991 incident, and the State dismissed Counts III and IV.

■ Nadeau contends that the victim's testimony that she was subjected to similar conduct on other occasions was not admissible to show the relationship between the victim and himself or on the issue of his opportunity to commit the crimes charged because these issues were uncontested. He also argues that this evidence should have been excluded as unfairly prejudicial because it provided an explanation for the victim's difficulty in remembering the specific occasions charged and allowed the jury to convict him on the assumption that if it happened that many times it must be true. Although Nadeau moved *in limine* to prohibit the State from introducing the evidence of uncharged sexual contact between himself and the victim, and objected when the State questioned the victim on redirect examination, he did not object to the instructions given by the court to the jury limiting its use of the evidence of uncharged acts. Accordingly, we review for obvious error affecting substantial rights. *State v. Whiting*, 538 A.2d 300, 302 (Me.1988).

M.R.Evid. 404(b)[6] prohibits the introduction of evidence of other crimes, wrongs, or acts for the purpose of proving a defendant's disposition to commit the crime charged. P. Murray, *Maine Evidence* § 404.4 at 4–43 (3d ed. 1992). "The rule does not prevent the introduction of evidence relevant to specified facts and propositions." *Id.* As discussed in the adviser's note to the rule, this type of evidence is admissible to demonstrate a defendant's intent, opportunity, motive, preparation, plan, knowledge, identity, or lack of mistake. M.R.Evid. 404(b) advisers' note; *State v. Nye*, 516 A.2d 560, 563 (Me.1986); *Pierce v. State*, 463 A.2d 756, 761 & n. 1 (Me.1983).

Evidence of a defendant's "continued sexual activity, including a specific prior or subsequent act similar to that charged," *State v. DeLong*, 505 A.2d 803, 806 (Me.1986), is admissible under 404(b) for "purposes that are 'probative of some element of the crime for which the defendant is being tried.'" *Id.* (citation omitted). In particular,

> [in] a case involving an alleged sexual offense, evidence of prior or subsequent similar acts between the parties may be admissible to show "the relationship between the parties that in turn sheds light on defendant's motive (i.e., attraction to the victim), intent (i.e., absence of mistake), and opportunity (i.e., domination of the victim) to commit the crime with which he was charged."

*Whiting*, 538 A.2d at 302 (quoting *DeLong*, 505 A.2d at 806); *see State v. Varney*, 641 A.2d 185, 186–87 (Me.1994) (evidence of sexual acts not occurring on dates specified in indictment admissible to show motive, intent, or opportunity to commit offense); *State v. Giovanini*, 567 A.2d 1345, 1346 (Me.1989) (no clear error in trial court's 404(b) determination that evidence of "truth or dare" game and uncharged sexual contact had some probative value in prosecution for gross sexual misconduct and unlawful sexual contact); *State v. Rubino*, 564 A.2d 59, 61 (Me.1989)

> which may shed light on his motive or opportunity or intent with regard to the alleged victim.

5. In its charge, the court stated:
    Additionally, I had mentioned to you or instructed you that any testimony relating to prior incidents which may be similar to the acts charged are not admissible to prove the character of the defendant in order to show that he acted in conformity therewith on these occasions. But it may be admitted to show a relationship between the parties or considered

6. M.R.Evid. 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."

(no error in admitting testimony of sexual abuse occurring outside Maine to show relationship between defendant and victim, defendant's intent, or defendant's opportunity to commit the crime); *State v. Ouellette,* 544 A.2d 761, 763 (Me.1988) (no abuse of discretion to allow testimony of uncharged sexual episodes between defendant and victim in order to show relationship between them); *DeLong,* 505 A.2d at 806 (evidence of prior on-going incestuous relationship between victim and defendant was relevant and admissible to show relationship between the parties that shed light on defendant's motive, intent, and opportunity to commit crime charged); *Pierce,* 463 A.2d at 760–61 (evidence that defendant had engaged in sexual activity with victim for "over two months" was admissible to show relationship between the victim and defendant).

Evidence admissible under Rule 404(b), however, is not automatically admitted. Pursuant to the balancing test contained in M.R.Evid. 403,[7] evidence of prior bad acts, although probative and relevant, "may still be excluded if ... its 'probative value is substantially outweighed by the danger of unfair prejudice.'" *State v. Smith,* 612 A.2d 231, 235 (Me.1992) (quoting M.R.Evid. 403). We have emphasized that such evidence should be admitted *only if* its prejudicial effect does not substantially outweigh its probative value. *See State v. Roman,* 622 A.2d 96, 98 n. 3 (Me.1993). The "risk of unfair prejudice from evidence of other sex crimes is particularly great [in the prosecution of sex abuse crimes] because of the general notion that sex offenders are more likely to be repeaters than persons committing other crimes." *Maine Evidence* at 4–49. Such evidence should be admitted with caution.

■ In this case, however, the evidence of the uncharged acts was highly probative to help explain the child's confusion as to the dates and circumstances of the charged sexual acts, and, because it was very brief and provided no details of the uncharged acts, was minimally prejudicial. Moreover, the

court properly instructed the jury as to the limited purposes for which they could consider the evidence. Accordingly, we conclude that there was no obvious error on its admission.

The entry is:

Judgments affirmed.

All concurring.

---

7. M.R.Evid. 403 states:
   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.