2002 ME 139

**STATE of Maine**

v.

**James R. KRIEGER.**

Supreme Judicial Court of Maine.

Submitted on briefs: Jan. 17, 2002.

Decided: Aug. 19, 2002.

Geoffrey Rushlau, District Attorney, Richard hartley, Asst. Dist. Atty., Bath, for State.

Joel C. Vincent, Vincent & Kantz, Portland, for defendant.

Panel: SAUFLEY, C.J., CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] James R. Krieger appeals his convictions following a jury trial in the Superior Court (Sagadahoc County, *Studstrup, J.*) on twenty-two counts of assault (Class D), 17–A M.R.S.A. § 207 (1983 & Supp. 2001), contending that because the court erred and acted outside the bounds of its discretion in denying his motion for a mistrial, in admitting evidence of a prior bad act, and in impermissibly permitting a first complaint witness to name him as the subject of the first complaint, he is entitled to a new trial. We are unpersuaded by Krieger's contentions and we affirm the judgment.

[¶ 2] Krieger was indicted on one charge of unlawful sexual contact (Class C), *id.* § 255 (Supp.2001), and twenty-two counts of assault, *id.* § 207, following allegations that Krieger rubbed the minor victim's buttocks and tickled her inappropriately when he baby-sat for her between May of 1998 and February of 2000. At the first trial, the court (*Warren, J.*) declared a mistrial because the victim testified that Krieger "confessed," referring to a statement he made regarding incidents involving two other girls.

[¶ 3] Before the second trial, the State moved *in limine* for the admission of evidence that Krieger admitted to exposing himself to one other girl and touching the genitals of another. The State also moved *in limine* to admit evidence regarding an incident when the victim awoke on the couch nude after Krieger had been baby-sitting for her. The court (*Studstrup, J.*) denied the State's motion to allow evidence of Krieger's conduct with other young girls, but granted the *in limine* motion to admit the victim's testimony about waking up nude. During the trial, the victim testified about the incident when she woke up nude. The victim's mother also testified about the incident, stating that when she confronted Krieger, he said that the victim had spilled something on her clothes; the clothes, however, were not stained when the mother looked at them.

[¶ 4] When asked whether she had seen Krieger since she reported his behavior, the victim responded: "Last trial I saw him." Krieger objected, moved for a mistrial, and rejected the State's suggestion that a curative instruction would be appropriate:

> [ASSISTANT DISTRICT ATTORNEY]: Judge, it was a very quiet answer, I heard it but just barely, and I think that this could be handled with an instruction to the jury.
>
> [KRIEGER'S ATTORNEY]: That would be wonderful, it would emphasize the fact that he had another trial. I just don't think it can be cured, Judge....

The court denied the motion, stating:

> I don't even think most of the jury would even have heard the answer, I certainly didn't. I am glad I didn't ask the Court Reporter to repeat it before we came over here to sidebar. The other fact being that we don't know whether the jury would not know who the trial—these particular charges or something else.[1]

[¶ 5] During the trial, pursuant to the first complaint rule, the State asked Che-

---

**1.** Krieger's counsel stated for the record that he was "further away from the witness than the jury," and he heard the testimony.

ryl Benoit, an administrator at the church where Krieger met the victim, whether the victim spoke to her about incidents between the victim and Krieger. The court initially sustained Krieger's objection to the question, but after a discussion at sidebar, permitted the question, stating, "you have to at least know who the subject of the complaint was to indicate that there's any relevance ...." Benoit testified that in March of 2000 the victim spoke with her about incidents involving Krieger, but did not relate any of the details other than Krieger's name. Thereafter, on cross-examination, Krieger brought out that the victim told Benoit that Krieger had rubbed her buttocks, but that she did not believe the touching was wrong "because she loved Krieger like a dad."

[¶ 6] After the close of evidence, the State dismissed the count of unlawful sexual contact. The jury returned a verdict of guilty on the twenty-two counts of assault. On the first count of assault, the court sentenced Krieger to 364 days in jail with all but six months suspended, followed by one year of probation. For each of the other twenty-one counts, the court sentenced Krieger to 364 days of imprisonment, to be served concurrently with each other, but consecutively to the sentence for the first count of assault, all suspended, followed by one year of probation running consecutively with the probation period for the first count of assault.

## I. PRIOR BAD ACT

[¶ 7] Krieger contends that the court erred in admitting the victim's testimony about a prior bad act because the testimony did not fall within an exception to M.R. Evid. 404(b), the testimony was speculative, and the incident described was different in kind from the conduct alleged by the State. We disagree.

[¶ 8] "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." M.R. Evid. 404(b). "In cases involving sexual offenses, evidence of prior similar uncharged conduct has been admitted to 'show the relationship between the parties that in turn sheds light on [the] defendant's motive (i.e., attraction to the victim), intent (i.e., absence of mistake), and opportunity (i.e., domination of the victim) to commit the crime with which he was charged.'" *State v. Poulos,* 1998 ME 43, ¶ 4, 707 A.2d 1307, 1308 (quoting *State v. Nadeau,* 653 A.2d 408, 410 (Me.1995)). The probative value of the evidence must not be substantially outweighed by any prejudicial effect pursuant to Rule 403. *State v. Turner,* 2001 ME 44, ¶ 5, 766 A.2d 1025, 1027.

[¶ 9] We recently held that evidence of uncharged sexual behavior was admissible when the victim initially thought that the defendant's contact with her genitals was accidental, but later concluded that it was intentional because it occurred repeatedly. *Poulos,* ¶¶ 2–4, 707 A.2d at 1308. The evidence of uncharged acts was admissible to establish the defendant's relationship with the victim, which was probative of the defendant's motive, intent, and opportunity to commit the charged offense. *Id.* ¶ 4. In a similar case, we held that the victim's testimony that the defendant used sexual paraphernalia in her presence was admissible to establish the nature of their relationship. *State v. DeMotte,* 669 A.2d 1331, 1335 (Me.1996); *see also State v. Ilsley,* 595 A.2d 421, 423–24 (Me.1991) (holding that evidence of prior harassing behavior was admissible to establish the defendant's intent to harass his victim); *Caron v. Caron,* 577 A.2d 1178, 1180 (Me. 1990) (upholding the admission of evidence of prior domestic abuse when the "contested incidents [were] relatively mild" and

the evidence was probative of the defendant's intent and of the victim's reasonable fear of the defendant); *State v. Heald,* 393 A.2d 537, 541–42 (Me.1978) (holding that evidence of an unsuccessful attempt to rob the murder victim's house three weeks before the charged crime was admissible to establish the defendant's design, motive, knowledge, and identity with regard to the murder of the victim during a robbery). Evidence of a prior bad act is inadmissible when the evidence is not sufficiently probative of any issue raised by the case. *See, e.g., State v. DeMass,* 2000 ME 4, ¶¶ 7, 13–16, 743 A.2d 233, 235–37 (holding it was clear error to admit letters in which the defendant made advances on the victim's sister because the letters were not probative of any legitimate issue).

[¶ 10] In the present case, there is evidence that Krieger offered a questionable explanation of why on one occasion the victim awoke nude after Krieger baby-sat for her. This evidence is probative of his intent in placing his hands on her buttocks and torso on other occasions. Because some of the touching was characterized as "tickling," the evidence of the prior incident is probative of whether Krieger intentionally or knowingly caused offensive physical contact or was as he claimed, touching the victim in an innocent way. *See* 17–A M.R.S.A. § 207(1) (1983) ("A person is guilty of assault if he intentionally, knowingly, or recklessly causes bodily injury or offensive physical contact to another."). That the evidence is circumstantial does not mean that it is speculative; the jury may weigh the evidence regarding the intent element of the crime. *See State v. Emery,* 650 A.2d 1341, 1342 (Me.1994) (stating that circumstantial evidence is admissible when it "has any rational tendency to prove or disprove a factual issue in the case" (quoting *State v. Doughty,* 399 A.2d 1319, 1322 (Me.1979))).

[¶ 11] Although a limiting instruction would have been appropriate to ensure that the jury did not regard the testimony as character evidence, Krieger did not request such an instruction and the State, in its closing argument, contended that the evidence should be considered only to establish context for the conduct that gave rise to the indictment. The absence of an instruction is not, therefore, obvious error. *See State v. Roman,* 622 A.2d 96, 99 (Me.1993) ("[I]n the absence of a request to the court to provide a limiting instruction [on the jury's use of evidence of a prior bad act], 'we can assume that counsel concluded that a limiting instruction would have overemphasized the importance of the evidence and decided to forego the request for strategic reasons.'" (quoting *State v. Rogers,* 389 A.2d 36, 38, (Me. 1978))).

[¶ 12] The evidence of the prior act was not so unfairly prejudicial as to substantially outweigh the probative value of the evidence in establishing an element of the crime. M.R. Civ. P. 403.

## II. MOTION FOR MISTRIAL

[¶ 13] Krieger contends that the court acted beyond its discretion in denying his request for a mistrial because the victim's statement about the last trial informed the jury that Krieger was involved in a previous trial, and the court erred in concluding that the jury probably did not hear the victim's testimony and would not make any improper inference if it was heard.

[¶ 14] Because of the trial judge's superior vantage point, we review a denial of a motion for a mistrial for an abuse of discretion, overruling the denial only in the event of prosecutorial bad faith or in exceptionally prejudicial circumstances. *State v. Cochran,* 2000 ME 78, ¶ 28, 749 A.2d 1274, 1281. "[T]he trial court's deter-

mination of whether exposure to potentially prejudicial extraneous evidence would incurably taint the jury verdict or whether a curative instruction would adequately protect against consideration of the matter stands unless clearly erroneous." *State v. Ardolino,* 1997 ME 141, ¶ 18, 697 A.2d 73, 79. "Knowledge by jurors that a prior trial ha[s] occurred is not per se prejudicial to [a] defendant[ ]." *State v. Weidul,* 649 A.2d 318, 319 (Me.1994) (quoting *State v. Libby,* 435 A.2d 1075, 1079 (Me.1981)).

[¶ 15] In *Libby,* 435 A.2d at 1078–79, we concluded that the trial court acted within its discretion in denying a motion for a mistrial when a witness stated that she and her husband had not discussed the crime much "since the last trial," and the defendant did not request a curative instruction. We explained that the court did not commit clear error in finding that the statement was not prejudicial because "[the] brief, cryptic reference to the 'last trial' left unclear who was tried, for what, and with what outcome. Moreover, fair deference is owed the trial court's finding on the spot because it observed exactly how [the witness] made her offending remark and how the jurors reacted to it." *Id.* at 1079. *See also Weidul,* 649 A.2d at 319 (concluding that the court did not abuse its discretion in denying a motion for a mistrial based on testimony by the defendant's father that the defendant "already served 29 months" when the defendant declined the court's offer to instruct the jury to disregard the testimony).

[¶ 16] In this case, the trial court was in the best position to determine the impact of the statement on the jurors, and Krieger's attorney rejected the State's suggestion that a curative instruction would be appropriate. The court did not commit clear error in finding that the victim's mention of the "last trial" was not so prejudicial as to warrant a mistrial, and

acted within its discretion in denying Krieger's motion.

## III. FIRST COMPLAINT

[¶ 17] Krieger also contends that the court erred in permitting Cheryl Benoit, the person to whom the victim first reported about being touched, to testify that the victim identified Krieger as the subject of the first complaint.

[¶ 18] A complaint of a sexual assault made to a third party shortly after the event is not hearsay, and is admissible to forestall the material assumption that absent such a complaint, nothing occurred. *State v. True,* 438 A.2d 460, 464 (Me.1981); FIELD & MURRAY, MAINE EVIDENCE § 801.11, at 419 (2000 ed.1999). Neither the details of the complaint, nor the identity of the perpetrator, however, are admissible pursuant to the first complaint rule. *State v. Lafrance,* 589 A.2d 43, 45 (Me.1991). "The only details that are admissible are those necessary to identify the complaint as being relevant to the charge on which the accused is being tried." *State v. Joel H.,* 2000 ME 139, ¶ 23, 755 A.2d 520, 526 (internal quotation marks omitted); *compare State v. Tripp,* 634 A.2d 1318, 1321 (Me.1994) (holding that a victim's statement that he " 'put a penis in [his] mouth" ' was admissible because it did not "identify [the] defendant in any way, and [was] simply a statement that abuse had taken place"), *with State v. Naylor,* 602 A.2d 187, 189 (Me.1992) (vacating because the victim's out-of-court identification of the defendant as the perpetrator should have been excluded).

[¶ 19] The admission of first complaint testimony identifying the defendant as the perpetrator is error. *Naylor,* 602 A.2d at 189. An error in the admission of evidence beyond what is allowed by the first complaint rule, however, need not

result in a conviction being vacated when the error is harmless. *Joel H.*, ¶¶ 22–23, 755 A.2d at 526. An error in admitting evidence about the victim's first complaint is harmless if the testimony restates facts that were "brought out by other witnesses, and it is highly probable that, in the circumstances of [the] case, the remaining inadmissible evidence would not have affected the factfinder's judgment." *Id.* ¶ 25 (citation omitted).

[¶ 20] In *Joel H.*, the father of the victim, over the objection of the defendant, was allowed to testify that the victim had reported sexual abuse to him. *Id.* at ¶ 22. Although the father did not reveal the name of the perpetrator named in the first complaint, he did testify as to some of the details of the sexual abuse. *Id.* We noted that the evidence exceeded the limits of the first complaint rule, and should have been excluded, but because much of what the father testified to had been brought out by the other witnesses, we concluded that the error was harmless. *Id.* ¶ 25.

▆▆▆ [¶ 21] Because Benoit was allowed to testify that the victim complained to her about Krieger, the admission of Benoit's testimony was error. The identity of Krieger was the *only* detail of the first complaint to which Benoit testified, however, and was no surprise to the jury.[2] The fact that the victim had reported to Benoit that Krieger had touched her had been admitted in evidence without objection *prior* to the testimony of Benoit.

[¶ 22] During the direct examination of the victim, when the victim was relating how Krieger touched her on many occasions, the following testimony occurred:

> Q. *[Victim] in the courtroom here today you have talked about some things that happened between you and Mr. Jim [how the victim referred to Krieger].*
>
> A. Yes, sir.
>
> Q. *Is this the first time that you have told anyone about this?*
>
> A. About my—about the incidents?
>
> Q. Right.
>
> A. *No, sir.*
>
> Q. *Who is the first person that you told about what happened to you?*
>
> A. *Miss Cheryl Benoit and my mother.*
>
> Q. Okay. How do you know Miss Cheryl Benoit?
>
> A. She attends our church.
>
> Q. Do you remember about when it was that you told Miss Benoit?
>
> A. *I spoke with her about the bottom rubbing.*
>
> Q. I am sorry?
>
> A. *I spoke with her about the bottom rubbing and how I felt—*
>
> Q. *When was it—let me try to make this easier. When was it in relation to when Mr. Jim started to come over and visit you at your house?*
>
> A. I don't understand the question.
>
> Q. Well, you said it was about a year ago—
>
> A. Yes, sir.
>
> Q. —that he stopped coming over to visit.
>
> A. Uh-huh.
>
> Q. *When did you talk with Miss Benoit about these incidents in relation to that, when he stopped coming over?*
>
> A. *The next day.*
>
> Q. Okay. How did you feel when you told Miss Benoit about this?

---

**2.** No other questions of Benoit were asked by the State in its direct examination. In the cross-examination of Benoit. Krieger's attorney elicited additional details of the first complaint.

A. I felt kind of sad and kind of—I felt a little bit ashamed in a way.

Krieger did not object to that testimony.

[¶ 23] In the circumstances of this case, because the details of the making of the first complaint to Benoit about Krieger rubbing the victim's bottom had already been testified to in front of the jury without objection, and the identity of the perpetrator, who touched and tickled the victim, was not an issue in dispute, it is highly probable that the brief testimony of Benoit did not affect the judgment of the factfinder and that the error was harmless. *See Joel H.*, ¶¶ 22–25, 755 A.2d at 526.

The entry is:

Judgment affirmed.

DANA, J., with whom CALKINS, J. join, dissenting.

[¶ 24] Although I agree with the Court's discussion of the admission of Krieger's prior bad acts and his motion for a mistrial, because I disagree with its conclusion that the violation of the first complaint rule was harmless, I respectfully dissent. We vacated a court's admission of first complaint testimony in a case indistinguishable from the present case. *State v. Naylor*, 602 A.2d 187, 189 (Me.1992). We held that the admission of a mother's testimony that the victim stated she was sexually abused by Naylor was not harmless error because "[s]uch testimony identifying [the defendant] as the perpetrator served to strengthen the victim's credibility" and the court could not say that it was "highly probable that [the] testimony did not affect the judgment." *Id.* As in the present case, identity was not an issue in

*Naylor*, we nonetheless concluded that the error was prejudicial. *Id.*

[¶ 25] The majority cites *State v. Joel H.*, 2000 ME 139, 755 A.2d 520, to support its conclusion that the error was harmless. In *Joel H.*, however, the father's first complaint testimony did not identify the defendant, but merely gave details of the assault that are not permitted pursuant to the first complaint rule. *Id.* ¶¶ 22–25, 755 A.2d at 526. We held that the testimony about the details was harmless because other witnesses had testified about those same details. *Id.* ¶¶ 22–25, 755 A.2d at 526.

[¶ 26] In the present case, the victim's statements to Benoit do more than overcome the presumption that absent a complaint, no misconduct took place; the identification buttresses the credibility of the victim, who was the only witness to testify about the details of the charged conduct. *Naylor*, 602 A.2d at 189. If a witness may testify about the victim's identification of the defendant in her first complaint as long as the victim has previously identified the defendant in court and testified that she told the witness about the assault, we have effectively overruled *Naylor* and eviscerated the well-settled rule that the introduction of hearsay identity testimony under the guise of the first complaint rule prejudicially buttresses the credibility of the victim. Accordingly, I dissent.