**STATE of Maine**

v.

**Leroy GOODRICH.**

Supreme Judicial Court of Maine.

Argued June 12, 1981.

Decided July 17, 1981.

David W. Crook, Dist. Atty., Paul Mathews (orally), Asst. Dist. Atty., Augusta, for plaintiff.

Burton G. Shiro Law Offices, Pamela J. Ames (orally), Waterville, for defendant.

Before McKUSICK, C. J., GODFREY and CARTER, JJ., and DUFRESNE, A. R. J.

CARTER, Justice.

Following trial before a jury in the Superior Court (Kennebec County), defendant LeRoy Goodrich was convicted of the rape, 17–A M.R.S.A. § 252(1), of his then ten-year old daughter, Patricia.[1] On appeal, the defendant argues that (1) the evidence was insufficient to support the conviction, (2) the prosecutrix was not competent to testify, (3) the trial court erred by not giving a requested jury instruction, and (4) the trial court erred by not granting defendant's motion for a mistrial. We vacate the judgment, and remand to the Superior Court for further proceedings.

---

1. 17–A M.R.S.A. § 252(1) reads in part:

A person is guilty of rape if he engages in sexual intercourse:

A. With any person, not his spouse, who has not in fact attained his 14th birthday . . . .

At trial, the prosecutrix, Patricia Goodrich, testified to the following: on the day before she and her mother moved out of the defendant's home in Clinton (July 11, 1979), she and the defendant (her father) were together in the bathroom. The defendant told her to pull down her pants. She refused. He struck her on the ear, causing an earache. She then pulled down her pants, and the defendant "stuck his private into [her] private." Patricia told her mother about this incident after the family left Clinton.

Patricia's mother, Virginia Goodrich, testified that she and most of her children left the defendant in Clinton on July 12, 1979. She stated that she had never asked Patricia to make up testimony and that Patricia had never told her about the alleged rape.

On cross-examination, Virginia Goodrich agreed that she had made statements in defense counsel's office in April 1980, and to a Sgt. Fippin, to the effect that she "had made all this up in order to get a quick divorce." On redirect, the prosecutor asked if "making this all up" referred to the incident with Patricia, to which Virginia answered: "With the other girl." The defendant objected; the objection was sustained. At side bar, the defendant unsuccessfully moved for a mistrial.[2] The jury was not instructed at that time to disregard the witness' answer.

The defendant testified that he had never had sexual intercourse with Patricia. He stated that Virginia had admitted to him and three other people that she had made up the charges, that she had talked them over with her children, and that she had made Patricia talk.

Alta Goodrich, the defendant's mother, testified that in April, 1980 Patricia told her that the charges were not true, but that "they told her to say it." Darlene Goodrich,

the prosecutrix's sister, testified that she heard this conversation. Alta also testified that Virginia admitted making up the story and telling Patricia what to say; LeRoy Goodrich, Jr., the prosecutrix's brother, testified that Virginia admitted the same thing to him.

Pastor Thomas Reeves testified that Virginia and the defendant came to him in April. Virginia then admitted that she had "trumped up the charges" against the defendant concerning sexual intercourse with Patricia.

Darlene Goodrich further testified that Virginia told Darlene and Patricia to say that they had had sex with the defendant. Darlene did tell someone that she had had sex with the defendant, but she testified that that statement was a lie.

## I. Sufficiency of the Evidence

■ Having moved for judgment of acquittal at the close of the prosecutrix's case and again at the close of all the evidence, the defendant has preserved for appeal the question of the sufficiency of the evidence. *State v. Smith*, Me., 400 A.2d 749, 754–55 (1979).

■ The uncorroborated testimony of a prosecutrix is sufficient to support a rape conviction unless that testimony is inherently improbable or incredible and does not meet the test of common sense. *State v. Foley*, Me., 392 A.2d 1094, 1096 (1978). In reviewing the evidence as a whole, we view it in the light most favorable to the State, and determine whether a rational trier of fact could find proof of guilt beyond a reasonable doubt. *State v. Bessey*, Me., 423 A.2d 244, 245 (1980); *State v. Lagasse*, Me., 410 A.2d 537, 542 (1980).

■ Patricia's testimony alone is not inherently improbable or incredible. It is the

---

**2.** Apparently, the defendant had initially been indicted on August 2, 1979, for the rape of Patricia's sister, Darlene. Virginia Goodrich had testified before the Grand Jury that she witnessed that offense. In March or April, 1980, at a deposition she recanted all of that testimony. Apparently, the indictment concerning Darlene was dismissed in May, 1980.

At side bar, the judge indicated that the possibility of this problem had previously been discussed. The prosecutor admitted that he had not instructed Virginia to avoid mentioning incidents not at issue at the trial.

jury's responsibility to determine the credibility of witnesses and the weight to be given their testimony. *State v. Flaherty*, Me., 394 A.2d 1176, 1177 (1978). We cannot say, therefore, that the evidence was insufficient to support the verdict.

## II. Competency of the Eleven-Year-Old Child Witness

■ The defendant argues that the trial court abused its discretion by allowing the prosecutrix, who was then eleven years old, to testify at the trial. Before the prosecutrix was permitted to testify, she underwent a voir dire examination during which questions were asked by both counsel and by the court.

Maine Rules of Evidence 601 is controlling authority for determining the competency of witnesses. *State v. Vigue*, Me., 420 A.2d 242, 246 (1980). Rule 601(b) provides in part:

A person is disqualified to be a witness if the court finds that (a) the proposed witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him, or (b) the proposed witness is incapable of understanding the duty of a witness to tell the truth.

At the voir dire, the prosecutrix understood and intelligently answered questions concerning her age, birthday and schooling. She perceived and described objects in the courtroom. She remembered and answered questions about a prior conversation she had had with the prosecutor. There is no basis for us to hold that the trial court abused its discretion in determining that the prosecutrix was capable of "expressing [herself] concerning the matter so as to be understood by the judge and jury. . . ." It is not necessary that a prosecutrix testify on voir dire concerning the events about which she will later testify before the factfinder in order for the judge to determine pursuant to Rule 601(b)(a) that she is capable "of expressing [herself] concerning the matter."

In addition, the prosecutrix demonstrated that she knew the difference between a lie and the truth, and that she knew that people who tell lies "get in trouble." She further testified that she would tell the truth. Again, there is no basis for us to hold that the trial court abused its discretion in determining that the prosecutrix understood "the duty of a witness to tell the truth."

## III. Jury Instructions

■ Defense counsel asked the trial court to instruct the jury that if it should find the prosecutrix's testimony to be uncorroborated then it should scrutinize her testimony with great care. The court declined to do so, instead giving general instructions on credibility including the following:

Remember you, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to . show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor and manner while on the witness stand. Consider the witnesses' ability to observe the matters as to which they testified and whether they impress you as having an accurate recollection of those matters. Consider also any relation each witness may bear to either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

At side bar, after the jury had been instructed, defense counsel indicated that he was satisfied with the instructions. He has therefore failed to preserve this claim of error for normal appellate review, leaving us to examine his claim under the obvious error standard of M.R.Crim.P. 52(b). *See* *State v. Morey*, Me., 427 A.2d 479, 482 n.2 (1981); *State v. Lewisohn*, Me., 379 A.2d 1192, 1208 (1977).

■ We have recently noted that the jury should scrutinize and analyze the uncorroborated testimony of a rape victim with the same degree of care as it would apply in scrutinizing the uncorroborated testimony of any other witness. *See State v. Bessey*, Me., 423 A.2d 244, 245 (1980). Here, the trial court instructed the jury to consider, in assessing credibility, the extent to which each witness was supported by other evidence. Thus, the jury was told to consider whether a witness's testimony was corroborated. "[A] party is not entitled to have his requested instruction given to the jury if it is already sufficiently covered in the charge actually given and the refusal to give the instruction does not prejudice the requesting party." *Id.* Here the trial court's failure to give the requested instruction was not an obvious error affecting substantial rights of the defendant.

## IV. Mistrial Motion

The defendant argues that Virginia Goodrich's answer, "with the other girl," informed the jury that the defendant may have been involved in unlawful sexual activity with someone other than the prosecutrix, thus unfairly prejudicing the jury against him. We agree.

■ Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith unless offered by the accused, or by the prosecution in rebuttal. M.R.Evid. 404(b). Such evidence may be admissible for other purposes such as to prove intent, identity, motive, etc. See M.R.Evid. 404(b) (Advisers' Note). In this case, the defendant did not place in issue whether he had the requisite intent necessary for conviction of rape; nor was there any question as to the identity of the perpetrator of the alleged crime. The defendant contended that the alleged rape did not, in fact, occur. Thus, evidence of other crimes would not have been admitted to prove intent or identity. *See United States v. Manafzadeh*, 592 F.2d 81 (2d Cir. 1979); *United States v. Powell*, 587 F.2d 443 (9th Cir. 1978) (both decided under F.R.Evid.

404(b)). Nor had the defendant then put his character in issue by introducing evidence of good character. *See State v. Roy*, Me., 385 A.2d 795, 797 (1978). We perceive no basis upon which this evidence could have been admitted.

The trial judge did not admit the evidence, as he sustained an objection to Virginia Goodrich's response. He denied the defendant's timely motion at side bar for a mistrial. No request was made of the court to instruct the jury to disregard the response, and no instruction was then given.

■ Whether a mistrial should be granted is a question left to the trial court's discretion. Ordinarily, errors should be cured by instructing the jury to disregard the offending evidence, but in exceptional circumstances, or where there is prosecutorial bad faith or misconduct, then an error may be incurable and require a mistrial. *See State v. Hilton*, Me., 431 A.2d 1296, 1306 (1981); *State v. Butts*, Me., 372 A.2d 1041, 1042 (1977); *State v. Heald*, Me., 292 A.2d 200, 203 (1972).

■ Here, the prosecutor was aware of the danger that witnesses might refer to alleged prior incidents. The record reflects that the day before the trial the parties discussed, with the court, the possibility of this problem, yet the prosecutor admitted to the trial court that he did not instruct his witnesses not to bring up other incidents. Moreover, the prosecutor clearly should have been aware that his questioning on redirect of Virginia Goodrich could reveal to the jury evidence of the alleged incident with Darlene, yet he did not request a preliminary ruling from the trial court before hazzarding this potentially explosive line of interrogation. Because the jury heard the prejudicial testimony as a result of what can at best be termed prosecutorial misjudgment, we will affirm this conviction only if we are certain that the defendant suffered no unfair prejudice thereby.

Evidence suggesting that the defendant had been involved in an incident with another girl similar to the offense for which he was on trial was extremely prejudicial:

(1) because of "the inevitable pressure on lay jurors to believe that 'if [the defendant] did it before he probably did so this time,' " see State v. Roy, Me., 385 A.2d 795, 798 (1978) (quoting Gordon v. United States, 127 U.S.App.D.C. 343, 347, 383 F.2d 936, 940 (1967), cert. denied 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968)) and (2) because if the jury believed that the defendant had not been punished for a prior offense, that "may well have impelled them to convict him, even if they had a reasonable doubt as to his guilt in the case before them," see State v. Gaudette, Me., 431 A.2d 31, 34 (1981). The usual remedy of giving immediate and strong admonitory instructions to the jury was not undertaken, thereby increasing the danger that the jury was unfairly prejudiced. While general curative instructions were given at the end of the trial,[3] such instructions, buried within the charge-in-chief, are of minimal value in countering seriously prejudicial testimony. Williams v. United States, 382 A.2d 1, 7 (D.C.App.1978); see United States v. Poston, 430 F.2d 706, 708 (6th Cir. 1970); see also United States v. Bussey, 432 F.2d 1330, 1334–35 (D.C.Cir.1970); cf. State v. Hilton, Me., 431 A.2d 1296, 1306 (1981); State v. Tibbetts, Me., 386 A.2d 736, 739 (1978) (In both cases, no reversible error—jury told in

charge-in-chief specifically what offending evidence to disregard). Moreover, by the time the instruction was given, the defendant had already been forced to undertake the refutation of the implication that he had been involved in a similar offense with another girl. Thus, the court's instruction was too little and too late.

Defense counsel did not ask for an immediate jury instruction. His objection and mistrial motion, however, clearly and forcefully informed both the trial court and the prosecutor of the basis for his concern. In light of the extremely prejudicial nature of the testimony heard by the jury, defense counsel believed that the damage was irreparable, and thus he moved solely for a mistrial. Cf. Tibbetts, 386 A.2d at 739 (Defense counsel's request that evidence be stricken plus his failure to move for mistrial showed that counsel did not claim irreparable unfair prejudice). Having been apprised of the nature of the defendant's objection and being aware of the prosecutor's misjudgment, the trial court either should have granted the motion for mistrial, or, at the very least, on its own initiative, it should have issued an immediate curative instruction to the jury. The court's failure to do either, in these circumstances, was prejudicial error.[4] See United States v. Ail-

---

3. The trial court, in its charge-in-chief, instructed the jury that: "Any evidence as to which an objection was sustained by me must be entirely disregarded."

4. We distinguish State v. Weeks, Me., 270 A.2d 366 (1970). There the Clerk inadvertently read part of an indictment charging the defendant with breaking into a building, when the defendant was on trial for aggravated assault. A mistrial motion was denied. The defendant's alibi witness testified about the defendant's arrest for the break. The trial court did not instruct the jury to disregard the reading of the wrong indictment, and after the close of jury instructions, defendant's attorney indicated that he was satisfied with the instructions. On appeal, the defendant alleged as error the trial court's failure to instruct the jury, in the charge-in-chief, to disregard the indictment. We held that the issue was not saved for appellate review; because the defendant chose for strategic reasons not to request a jury instruction in the charge-in-chief, he could not, on appeal, take advantage of the fact that the trial court, on being told no further instructions

were requested, gave none. In the instant case, in the context of the presence of prosecutorial misjudgment, the defendant alleges as error the failure to grant the mistrial. This error was clearly saved for appellate review.

We also distinguish State v. Hilton, Me., 431 A.2d 1296 (1981). There, a witness made allegedly prejudicial gestures while testifying that the defendant had said that the victim had committed suicide by hitting himself on the head with an axe. The trial court sustained an objection, denied a mistrial motion, declined to give an immediate curative instruction, but specifically instructed the jury to "ignore the demonstration by [witness]" in the charge-in-chief. We found that the demonstration was not exceptionally prejudicial, if it was prejudicial at all. More importantly, the gestures did not inform the jury of any allegations or facts of which they were not already aware. Unlike the instant case, the defendant was not forced to attempt to refute anything that he otherwise would not have had to refute, and therefore a specific jury instruction in the charge-in-chief was not necessarily "too late."

*stock,* 546 F.2d 1285, 1291 (6th Cir. 1976); *State v. Cooper,* 165 N.J.Super. 57, 397 A.2d 702, 706 (1979) (*quoting Greenberg v. Stanley,* 30 N.J. 485, 503, 153 A.2d 833, 842 (1959)).

We cannot say that the error here was harmless. The evidence of guilt, while sufficient to sustain a conviction, is far from overwhelming. It consists solely of the essentially uncorroborated testimony of the prosecutrix.[5] The defense presented evidence which indicated that the prosecutrix had been told by her mother to make up her story, and evidence that the prosecutrix had admitted that her story was not true.

In summary, the jury was exposed to extremely prejudicial testimony which was not admissible under any theory; the prosecutor, though aware of the danger, failed to take steps to prevent it; the defendant promptly moved for a mistrial; the jury was not immediately instructed to disregard the testimony; and the evidence supporting the conviction was far from overwhelming. In comparable situations, it has been held that a mistrial would have been the only appropriate remedy. *See United States v. Carney,* 461 F.2d 465 (3d Cir. 1972); *State v. Colvin,* 425 A.2d 508 (R.I.1981). We need not go so far. We do not decide whether prompt instruction of the jury might have removed the unfair prejudice in this case. We conclude simply that on the record before us, the defendant did not receive a fair trial.

We reject two further "waiver" arguments made by the State. First, the State argues that the defendant was aware that Virginia Goodrich's retraction involved only the charges involving Darlene (the other girl), and thus by questioning Virginia about her retraction he ran the risk of the jury hearing in rebuttal about those charges. This argument assumes that defense counsel knew that Virginia in fact had not retracted any statements concerning the prosecutrix. Yet several defense witnesses testified that Virginia indeed did admit making up charges involving the prosecutrix. Moreover, defense counsel, in his cross-examination of Virginia, carefully avoided referring to any alleged incident involving Darlene.

The State also argues that by later calling Darlene as a witness, the defendant waived any error. Such a holding would put the defendant in a strategically impossible position; once the jury was wrongfully made aware of the other incident, the defendant could either do nothing (hoping for a reversal on appeal), or he could try to avoid conviction by explaining the circumstances of the prior charges, thereby taking the risk that the appellate court would treat him as having "adopted" the objectionable testimony for strategic purposes. We refuse to put the defendant to that choice.

The entry is:

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

5. The State argues that evidence that the prosecutrix, sometime after the date of the alleged rape, had an ear infection, corroborates her testimony that the defendant struck her on the ear. There is no testimony of either when the ear problem arose or of what could have caused it (*i. e.,* could a blow to the ear have caused it). The only testimony that a blow was struck came from the prosecutrix.