**STATE of Maine**

v.

**Laurence DeMOTTE.**

Supreme Judicial Court of Maine.

Argued Oct. 31, 1995.
Decided Jan. 17, 1996.

Geoffrey Rushlau (orally), District Attorney, Rockland, for the State.

Daniel C. Purdy (orally), Stephen A. Little & Associates, Rockland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

Laurence DeMotte appeals from the judgments entered in the Superior Court (Knox County, *Kravchuk, J.*) (1) denying his motion to dismiss, and (2) pursuant to a jury verdict, convicting DeMotte of five counts of gross sexual misconduct in violation of 17–A M.R.S.A. § 253 (1983 & Supp.1988)[1] and

---

1. 17–A M.R.S.A. § 253 (1983 & Supp.1988) provided in pertinent part:

A person is guilty of gross sexual misconduct

three counts of unlawful sexual contact in violation of 17–A M.R.S.A. § 255(1) (Supp. 1992).[2] DeMotte contends the trial court erred in: failing to dismiss the grand jury indictment against him after the State seized documents from DeMotte's jail cell that the court determined were privileged attorney-client communications; admitting into evidence seized documents over DeMotte's objections that they were privileged psychotherapist-patient communications; admitting evidence of DeMotte's use of certain sexual paraphernalia; conducting a portion of the jury *voir dire* at sidebar while DeMotte was seated at counsel table; and denying, in part, DeMotte's motion for release of the Department of Human Services records related to the victims. Finding no error or abuse of discretion, we affirm the judgments.

The facts and procedural history may be briefly summarized. On December 8, 1993, the grand jury indicted DeMotte on five counts of gross sexual misconduct (counts I–

1. If he engages in a sexual act with another person and

   .     .     .     .

B. The other person, not his spouse, has not in fact attained his 14th birthday[.]
Although the title of this offense was changed to "Gross Sexual Assault" by P.L.1989, ch. 401, § (A)(4), the elements of the offense remain the same. *See* 17–A M.R.S.A. § 253(1)(B) (Supp. 1994).

2. 17–A M.R.S.A. § 255(1)(C) (Supp.1992) provided:
1. A person is guilty of unlawful sexual contact if the person intentionally subjects another person to any sexual contact, and:

   .     .     .     .

C. The other person, not the actor's spouse, has not in fact attained the age of 14 years and the actor is at least 3 years older[.]

3. While incarcerated at the Knox County Jail, DeMotte was placed in the maximum security section. The shakedown in this case consisted of a search of that entire section.

4. The attorney-client privilege is codified in M.R.Evid. 502(b) that provides in pertinent part:
A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client....

5. The psychotherapist-client privilege is codified in M.R.Evid. 503 that provides in pertinent part:
(a) **Definitions.** As used in this rule:

V), four counts of unlawful sexual contact (counts VI–IX), and one count of gross sexual assault (count X). In substance, the indictment charged that DeMotte had engaged in various forms of unlawful contact with four male juveniles during the period 1988 to 1993. Although bail was set, DeMotte remained incarcerated in the Knox County Jail pending trial. During the trial, on a motion by DeMotte, the court entered a judgment of acquittal on count X. Following a three-day trial, the jury found DeMotte guilty on counts I–VIII and not guilty on count IX. DeMotte appeals from the judgments.

## A. SEIZED DOCUMENTS

DeMotte contends that documents, some seized during a routine "shakedown" of his jail cell prior to trial[3] and others from his cell pursuant to a search warrant, were privileged attorney-client[4] and psychotherapist-patient[5] communications.

(1) A "patient" is a person who consults or is examined or interviewed by a physician or psychotherapist.

   .     .     .     .

(3) A "psychotherapist" is (A) a person authorized to practice medicine in any state or nation, or reasonably believed by the patient so to be, while engaged in the diagnosis or treatment of a mental or emotional condition, including alcohol or drug addiction, or, (B) a person licensed or certified as a psychologist or psychological examiner under the laws of any state or nation, while similarly engaged.
(4) A communication is "confidential" if not intended to be disclosed to third persons other than those present to further the interest of the patient in the consultation, examination, or interview, or persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the physician or psychotherapist, including members of the patient's family.
(b) **General Rule of Privilege.** A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition ... among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

### 1. Attorney–Client Privilege

■ During the initial shakedown of De-Motte's cell, corrections officers seized, *inter alia*, two sheets of paper, one of which had a handmade drawing of a nude male with his genitals exposed.[6] The corrections officers gave the seized documents to Detective Ernest McIntosh, the primary investigator in charge of the DeMotte case. Based on the contents of these documents, McIntosh obtained and executed a search warrant for DeMotte's cell. The search resulted in the seizure of five notebook pads. DeMotte asserted that some of the documents obtained during the shakedown and subsequent warranted search were privileged attorney-client communications. DeMotte thereafter filed a motion asserting that the actions by the corrections officers violated his Sixth Amendment right to counsel and therefore the indictment should be dismissed with prejudice. Although the court found that certain of the documents were "clearly protected" confidential attorney-client communications, the court also determined that "dismissal of the charges would be an inappropriate remedy for what was apparently an inadvertent seizure." We agree.

■ Clients have the right to prevent disclosure of "confidential communications made for the purpose of facilitating the rendition of professional legal services." M.R.Evid. 502(b), *supra* n. 4. This important right, however, must be balanced with the well-established principle that "routine shakedowns of prison cells are essential to the effective administration of prisons.... Prison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Hudson v. Palmer,* 468 U.S. 517, 529, 528 n. 8, 104 S.Ct. 3194, 3201–3202, 3201 n. 8, 82 L.Ed.2d

393 (1984). To balance these two principles once a seizure of privileged matter has occurred, the State must take adequate precautions to ensure that any information gleaned from the search that may be subject to the attorney-client privilege is not used, in any way, to the detriment of the client. In this case, that is precisely what the State did.

Following the search and claim of privilege, Detective McIntosh reviewed each document with a paralegal from the District Attorney's Office in an attempt to discern whether any of the material was potentially subject to the privilege. The paralegal did not divulge any of the information gathered during this review to the Assistant District Attorney responsible for prosecuting DeMotte. Moreover, following this review, a "Chinese wall" was constructed within the District Attorney's office. Accordingly, the paralegal never discussed, nor was privy to any discussions involving, the DeMotte case.[7] Following the hearing on DeMotte's motion to dismiss, the court retained a sealed copy of the privileged materials to enable it to compare the evidence offered by the State with the privileged material should DeMotte make an objection based on the attorney-client privilege at trial.[8] Under the circumstances, the procedure fashioned by the court was entirely appropriate.

### 2. Psychotherapist–Patient Privilege

■ DeMotte contends that the trial court erred by admitting in evidence, over his objection, documents seized that DeMotte contends were drafted at the behest of a mental health "counsellor" provided to him by the State while he was incarcerated in Knox County prior to the trial. DeMotte's contention is unavailing for two reasons. First,

---

**6.** Jail regulations prohibit the possession of pornographic material.

**7.** Detective McIntosh testified during the trial. DeMotte contends that because McIntosh was one of the individuals who reviewed the privileged material, his testimony prejudiced De-Motte. Detective McIntosh interviewed all of the victims and was the primary investigator on this case. The State was entitled to present his testimony as long as none of the privileged material was used. DeMotte did not object at trial that any of the testimony elicited from McIntosh was

the result of his review of any of the privileged materials, nor does our review of the record disclose such use.

**8.** DeMotte contends that the State should bear the burden of proving that he was not prejudiced and that the motion court erred by not so ordering. Contrary to DeMotte's contentions, however, the only "burden" placed on him was to object at the trial if the State attempted to use the privileged information.

DeMotte failed to establish that the "counsellor" was a "psychotherapist" within the meaning of M.R.Evid. 503(a)(3). *Supra*, n. 5. Second, DeMotte has failed to establish that the writings at issue were intended to be "confidential communications" between DeMotte and his "counsellor." The writings repeatedly reference DeMotte's affections for certain of the victims and read more as diary entries rather than communications intended for treatment with his "counsellor." Accordingly, DeMotte was not entitled to avail himself of the privilege.

■ DeMotte further contends that the writings were inadmissible pursuant to M.R.Evid. 403.[9] We review the trial court's decision to admit evidence over a Rule 403 objection only for an abuse of discretion. *State v. Robinson*, 628 A.2d 664, 666 (Me. 1993). Although the writings were prejudicial, they described the level of affection DeMotte felt for certain of the victims and were therefore highly probative of the nature of his relationship with them. Accordingly, the trial court acted well within its discretion in admitting the writings over DeMotte's Rule 403 objection.

### B. TESTIMONY REGARDING USE OF SEXUAL PARAPHERNALIA

■ During the presentation of its case in chief, the State introduced testimony by one of the victims, over DeMotte's objection, regarding DeMotte's use of certain sexual paraphernalia in the presence of the victim. The court determined that this testimony was relevant to a "motive, scheme or plan or pattern of conduct between this victim and the defendant."[10] DeMotte contends that the victim saw DeMotte using the paraphernalia only one time and that he did not intend for the victim to see such activity. We review the trial court's decision to admit the evidence (1) pursuant to Rule 404 for clear error, and (2) over a Rule 403 objection for

an abuse of discretion. *State v. Giovanini*, 567 A.2d 1345, 1346 (Me.1989); *Robinson*, 628 A.2d at 666.

Contrary to DeMotte's contentions and testimony at trial, the victim's testimony supports the inference that DeMotte used the paraphernalia in the presence of the victim on a regular basis. The evidence was highly probative of the nature of his relationship with that victim and its admission into evidence was neither clearly erroneous nor an abuse of discretion. *See generally State v. Whiting*, 538 A.2d 300, 302 (Me.1988) (evidence of similar acts between the parties relevant to show nature of relationship).

### C. JURY *VOIR DIRE*

■ DeMotte contends the trial court erred in conducting a portion of the *voir dire* of potential jurors at sidebar while DeMotte remained seated at counsel table. Because DeMotte's counsel was present for this *voir dire* and did not object to DeMotte's absence, we review the conduct of the trial court only for obvious errors affecting substantial rights. M.R.Crim.P. 52(b); *State v. Weisbrode*, 653 A.2d 411, 415 (Me.1995) ("Obvious error is error so highly prejudicial that it taints the proceedings and virtually deprives the defendant of a fair trial.") (citing *State v. True*, 438 A.2d 460, 468 (Me.1981)). The absence of DeMotte from the sidebar while jurors were questioned about their responses to a confidential questionnaire was not obvious error. *See State v. Fernald*, 248 A.2d 754, 759 (Me.1968) (defendant's presence unnecessary where no indication that defendant could have assisted counsel).

### D. DEPARTMENT OF HUMAN SERVICES RECORDS

■ DeMotte finally contends that the Superior Court (*Brodrick, J.*) erred in denying in part his motion for the release of the Department of Human Services (DHS) rec-

---

9. M.R.Evid. 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ."

10. M.R.Evid. 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show

that he acted in conformity therewith." This rule does not, however, prohibit such evidence when offered as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M.R.Evid. 404(b) advisers' note.

ords related to the victims and their families. The court examined the requested records *in camera* and ordered the release of two of the records specifically requested by DeMotte: (1) a record in which one of the victims denied having been abused by Demotte;[11] and (2) a record containing a referral to the District Attorney from the DHS dealing with the alleged abuse of one of the victims by a mentally retarded woman.

DeMotte was entitled to the release of the disputed records only if they "probably would have changed the outcome of his trial." *State v. Perry,* 552 A.2d 545, 547 (Me.1989) (quoting *Pennsylvania v. Ritchie,* 480 U.S. 39, 58, 107 S.Ct. 989, 1001–1002, 94 L.Ed.2d 40 (1987)). Our review of the disputed records discloses that they would not.

The entry is:

Judgments affirmed.

All concurring.

---

11. At oral argument, *DeMotte* contended that the court failed to release records in which one of the victims denied having been abused. Our careful review of the DHS records in their entirety, however, discloses that although the victim's denial is included in the un-released records, the same denial is part of the records that were released. The court did not err in refusing to release other records containing the identical denial.