2000 ME 4

**STATE of Maine**

v.

**Richard E. DeMASS Jr.**

Supreme Judicial Court of Maine.

Argued Dec. 7, 1999.

Decided Jan. 11, 2000.

Geoffrey A. Rushlau, District Attorney, Patricia A. Mador, Asst. Dist. Atty. (orally), Eric Morse, Asst. Dist. Atty., Rockland, for State.

Leonard I. Sharon (orally), Sharon, Leary & DeTroy, Auburn, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and CALKINS, JJ.

DANA, J.

[¶ 1] Richard E. DeMass Jr. appeals the judgment entered on his conviction of twenty-three counts of gross sexual assault (Class A) in violation of 17–A M.R.S.A. § 253[1] and five counts of assault (Class D) in violation of 17–A M.R.S.A. § 207,[2] following a jury trial in the Superior Court (Knox County, *Atwood, J.*). DeMass contends that the court erred by admitting in evidence letters written by him to the victim's sister. We agree, vacate the conviction, and remand for a new trial.

## I. TESTIMONY

[¶ 2] The victim testified as follows: While she and her sister were still living at home, their mother married DeMass. Soon thereafter while her mother was in the hospital, the victim woke up to find DeMass kissing her. She was eleven years old at the time. She stated that she could smell alcohol on DeMass's breath. She estimated that he drank several times a week, but that his drinking increased over time. She also stated that he would get violent and aggressive when he was drinking.

[¶ 3] The victim testified that shortly after this incident DeMass came to her room while she was in bed and touched both her breasts and her vagina. He threatened to kill her mother if she told

1. Title 17–A, section 253 provides in relevant part:
    1. A person is guilty of gross sexual assault if that person engages in a sexual act with another person and:
    A. The other person submits as a result of compulsion, as defined in section 251, subsection I, paragraph E; or
    B. The other person, not the actor's spouse, has not in fact attained the age of 14 years.

    . . . .
    17–A M.R.S.A. § 253(1) (Supp.1999).

2. Title 17–A, section 207 provides in relevant part:

    1. A person is guilty of assault if he intentionally, knowingly, or recklessly causes bodily injury or offensive physical contact to another.
    17–A M.R.S.A. § 207(1) (Supp.1999).

anyone. The victim indicated that thereafter such incidents happened on a regular basis, roughly twice a month until 1994. In 1994 her sister moved to Massachusetts to live with their father. It was at this point, according to the victim, that DeMass first had intercourse with her. She described experiencing pain and bleeding following this first incident. She went on to testify that thereafter DeMass would either have intercourse with her or masturbate in her presence roughly twice a month. She also noted that DeMass continued to threaten that he would harm her mother if she told anyone what was happening.

[¶ 4] The victim eventually moved to Massachusetts in January 1996, after an argument with her mother. She returned to Maine, however, after DeMass promised to leave her alone. She testified that she returned to Maine to be with her mother. She also stated that, notwithstanding DeMass's promise, he continued to touch her inappropriately, but that they no longer had intercourse.

[¶ 5] In 1997 the victim moved back to Massachusetts. She went to a crisis center in Massachusetts after expressing to her stepmother a desire to kill herself. She testified that this was the first time she told anyone about the sexual abuse by DeMass. She eventually went to the police and was referred to Dr. Lawrence Ricci at the Spurwink Child Abuse Program.

[¶ 6] Dr. Ricci testified as to the results of his examination of the victim and the case history that she provided him. He stated that the results of his examination were consistent with the history provided to him by the victim. He found that her hymen was both thinned and that the opening was enlarged, and that this was consistent with multiple occasions of penile-vaginal penetration. He also testified that this could not have been caused by the two episodes of consensual sex with her peers that the victim had described to him. He observed absent tissue at the five o'clock position, which was consistent with tearing and the bleeding that the victim had described. Dr. Ricci went on to state that tearing and injury are more likely in a prepubicial adolescent.

[¶ 7] The victim's sister testified that DeMass drank excessively, that he would fall asleep at the dinner table, and, on one occasion, spent the night on the floor. She also testified to an incident occurring in October 1998, in which he wrote her, while intoxicated, what she considered an inappropriate letter and then gave her two more letters. The letters were admitted in evidence over DeMass's objection. The first letter appeared to be soliciting romantic contact with the sister. It said such things as, "I just want to hold [you], feel you, love you, kiss you. Please d[on't] freak out.... I am not a perfert [*sic*]." The next two letters repeated similar sentiments while at the same time apologizing for the first letter.

[¶ 8] In addition to this testimony introduced by the State, on cross-examination by DeMass, the sister testified that the victim went through a period in her life in which she lied about things. She stated that she initially doubted the victim's allegations of abuse. In response to a question by DeMass regarding the letters, however, the sister stated that after she received them she believed that the victim was telling the truth.

[¶ 9] DeMass testified that he never had any kind of sexual encounter with the victim. The State's numerous questions regarding the letters to the victim's sister constituted the majority of its cross-examination of DeMass. He testified that his letters were not meant to have a sexual connotation, but, rather, were meant to repair his familial relationship with the victim's sister that had broken down after the victim's reports of abuse.

[¶ 10] The jury returned a verdict of guilty on all counts. DeMass filed a motion requesting a new trial or, alternative-

ly, a judgment of acquittal which the court denied. He then appealed to this Court.

## II. THE LETTERS

■ [¶ 11] DeMass argues that the letters to the victim's sister and testimony regarding them should have been excluded either pursuant to M.R. Evid. 404(b)[3] or M.R. Evid. 403.[4] Because DeMass properly preserved his objection to the admission of the letters, we review the trial court's decision to admit the evidence pursuant to Rule 404(b) for clear error and its determination pursuant to Rule 403 for an abuse of discretion. *See State v. Thompson*, 1997 ME 109, ¶ 14, 695 A.2d 1174, 1179; *State v. DeMotte*, 669 A.2d 1331, 1335 (Me. 1996).

[¶ 12] As the Advisers' Note to Rule 404(b) indicates, evidence of other crimes, wrongs or acts *is* admissible for purposes other than to show propensity, such as to demonstrate motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. M.R. Evid. 404 advisers' note; *see also State v. DeLong*, 505 A.2d 803, 805 & 806, n. 1 (Me.1986). We have also recognized that such evidence may be admitted to show the relationship between the parties. *See DeLong*, 505 A.2d at 805. When a proponent of such evidence, however, seeks to have it admitted for one of these purposes, the party must articulate with particularity the purpose and its relationship to a disputed issue in the case. *See* Field & Murray, *Maine Evidence* § 404.4 at 129 (4th ed.1997). We have stated previously, "[s]uch evidence may be admitted *only if it is relevant* to some ... issue [other than acting in conformity with the behavior] at trial." *State v. Works*, 537 A.2d 221, 222

(Me.1988) (citation omitted) (emphasis added). General assertions that the evidence has some usefulness with respect to a laundry list of permissible purposes does not satisfy this requirement.

[¶ 13] The State contends that DeMass's letters to the victim's sister demonstrate motive, an attraction toward children, absence of mistake, opportunity, domination of the victim, a pattern of conduct, and the relationship between DeMass and his stepdaughter (the State does not indicate which stepdaughter, however). The absence or presence of mistake was not at issue in DeMass's trial, nor was the absence or presence of opportunity. DeMass simply asserts that the alleged acts of abuse never took place. *Cf. State v. Goodrich*, 432 A.2d 413, 417 (Me.1981) (because defendant did not place intent or identity at issue, but rather made a simple denial, testimony alluding to a prior bad act was not admissible).

■ [¶ 14] With regard to motive, although we have indicated that other acts directed *at the victim* may be admissible to show motive or intent, *see, e.g., State v. Valentine*, 443 A.2d 573, 578 (Me.1982), the letters were not directed at the victim and therefore have no bearing on DeMass's motive with regard to her. For the same reason, the letters to the sister have no bearing on whether DeMass exercised domination over the *victim*.

■ [¶ 15] Similarly, if by "pattern of conduct," the State means plan, it is hard to see how a temporally and factually isolated communication between DeMass and the victim's adult sister demonstrates an ongoing plan or scheme. The letters were sent two years after the last charged inci-

---

**3.** Rule 404(b) provides in relevant part:
    **(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith.
M.R. Evid. 404(b).

**4.** Rule 403 provides in relevant part:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading to the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
M.R. Evid. 403.

dent of abuse of the victim. Furthermore, the act of sending a letter soliciting romantic contact from the victim's nineteen-year-old sister differed in nature from the charged acts of forced sexual conduct toward the young, adolescent victim. *Compare Thompson*, 1997 ME 109, ¶ 13, n. 7, 695 A.2d at 1179, n. 7; *State v. Lakin*, 536 A.2d 1124, 1127 (Me.1988).

 [¶ 16] With respect to the State's claim that the letters demonstrate the relationship between DeMass and the victim, the record is entirely to the contrary. As is evident from the content of the letters, they have no bearing whatsoever on the relationship between DeMass and the victim. Therefore, admission of the letters pursuant to M.R. Evid. 404(b) constituted clear error. Unless the error was harmless, we must vacate the conviction. *See* M.R.Crim. P. 52(a); *State v. Palmer*, 624 A.2d 469, 471 (Me.1993).

[¶ 17] Error is harmless when it is highly probable that it did not affect the jury's verdict. *See State v. Donovan*, 1997 ME 181, ¶ 9, 698 A.2d 1045, 1048. In this case, however, other than DeMass's letters, the testimony of the victim comprised the majority of the evidence against DeMass. While Dr. Ricci testified to his physical findings, he could not comment on their cause except to the extent that they conformed to the history provided to him by the victim. In the absence of the letters, the case devolves into the victim's testimony versus that of DeMass. For that reason, we cannot say that it is highly probable that the letters did not affect the jury's verdict. *Cf. Goodrich*, 432 A.2d at 419 (erroneous admission of evidence not harmless when "[t]he evidence of guilt,

while sufficient to sustain a conviction, [was] far from overwhelming. It consist[ed] of the essentially uncorroborated testimony of the [victim]"). The error was not harmless.[5]

The entry is:

Judgment of conviction on all counts vacated; remanded to the Superior Court for further proceedings consistent with this opinion.

---

5. The State stressed in its argument that the act of writing the letters was not a crime because the victim's sister was nineteen years old, and did not have the requisite degree of relationship to DeMass for the solicited conduct to amount to incest. *See* 17-A M .R.S.A. § 556(1) (Supp.1999) (requiring second degree of consanguinity). While this may be relevant to a Rule 403 analysis, it is in no way dispositive of the Rule 404(b) analysis, as the rule applies not just to crimes, but to other wrongs or acts. M.R. Evid. 404(b). We note, however, on these facts, that the risk of unfair prejudice flowing from the letters does outweigh their probative value pursuant to Rule 403, notwithstanding the fact that writing them was not a crime. *See State v. Works*, 537 A.2d 221, 222–23 (Me.1988); Field & Murray, *supra*, §§ 403.11 at 121 & 404.4 at 128.